**AVOCENT REDMOND CORP., Plaintiffs,**

v.

**ROSE ELECTRONICS, INC., et al., Defendants.**

**No. CV06–1711MJP.**

United States District Court, W.D. Washington, at Seattle.

May 24, 2007.

Donald L. Jackson, J. Scott Davidson, James D. Berquist, Davidson Berquist Jackson & Gowdey LLP, Arlington, VA, John Alan Knox, Williams Kastner & Gibbs, Seattle, WA, for Plaintiffs.

Brian L. Jackson, Jeffrey J. Phillips, Michael S. Dowler, Thomas L. Casagrande, Howrey LLP, Houston, TX, Molly A. Terwilliger, Heller Ehrman LLP, Thomas Fitzgerald Ahearne, Foster Pepper, Jerry A. Riedinger, Ryan McBrayer, Perkins Coie, Michael A. Moore, Corr Cronin Michelson Baumgardner & Preece, LLP, Seattle, WA, Ming–Tao Yang, Yitai Hu, Akin Gump Strauss Hauer & Feld LLP, Palo Alto, CA, Richard J. Codding, Sr., Akin Gump Strauss Hauer & Feld LLP, David Enzminger, Ryan Yagura, Vision L. Winter, O'Melveny & Myers, Los Angeles, CA, David L. Debruin, Larry L. Saret, Michael Best & Friedrich LLP, Chicago, IL, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART AVOCENT'S MOTION FOR PROTECTIVE ORDER AND DENYING DEFENDANTS' CROSS–MOTION FOR PROTECTIVE ORDER

PECHMAN, District Judge.

This matter comes before the Court on the parties cross-motions regarding entry of a protective order. This is a patent case involving Keyboard–Video–Mouse (KVM) switch technology. The parties have reached agreement on the majority of a protective order, but disagree regarding three provisions in the order. Plaintiff Avocent Redmond Corp. has moved for entry of its version of the protective order. (Dkt. No. 57.) Defendants oppose Plaintiff's motion and collectively filed a cross-motion requesting that the Court adopt Defendants' version of the protective order. (Dkt. No. 70.) Having considered Avocent's motion, Defendants' opposition and cross-motion, Avocent's reply (Dkt. No. 75), Defendants' reply (Dkt. No. 81), and Avocent's surreply (Dkt. No. 82), the Court GRANTS IN PART and DENIES IN PART Avocent's motion for protective order and DENIES Defendants' cross-motion for protective order.

### Discussion

Under Fed.R.Civ.P. 26(c), the Court, upon a motion and a showing that the parties have conferred in good faith, may issue a protective order. In this case, the parties have conferred and agree on a majority of the proposed protective order. But three areas of disagreement remain: (a) the definition of information that may be designated as "Attorneys Eyes Only"; (b) the amount of time

after a deposition that a party has to designate the testimony as confidential or Attorneys Eyes Only; and (c) whether outside counsel that receives Attorneys Eyes Only information should be precluded from any involvement in patent prosecution regarding KVM switch technology before any patent office worldwide for a period ending two years after the conclusion of this case and all subsequent appeals (Defendants' proposal).

### A. Definition of "Attorneys Eyes Only" Information

Both protective orders proposed by the parties provide that proprietary information can be designated under one of two confidentiality levels: the lower tier of "Confidential" or the higher tier of "Attorneys Eyes Only." In their initial motions, the parties dispute what information is properly designated as Attorneys Eyes Only. Avocent's proposed definition includes the plain text in the following, with Defendants' proposed additions and deletions to Avocent's proposal indicated in bold text:

> Proprietary Information relating to highly sensitive financial information, including but not limited to, customer identification, *sales and cost information,* sales prices to specific customers, profit margins, *trends, projections, current and* prospective marketing strategies, *or other highly sensitive financial information not yet publicly disclosed,* and highly sensitive technical information, including but not limited to, product design and development materials ~~relating to products not yet for sale or released to the public,~~ *schematics, gerber files, layouts,* source code, *CAD drawings, specifications,* or other highly sensitive, ~~trade secret~~ technical information not yet publicly disclosed, may be designated as ATTORNEYS EYES ONLY.

The parties appear to have resolved this issue through their briefing. Both parties prefer a "document-by-document" determination of confidentiality. In their reply, Defendants agree with Avocent's approach as explained in the briefing. Because the parties appear to be in agreement, but because Avocent has not had an opportunity to respond to Defendants' reply, the Court adopts Avocent's proposed definition of "Attorneys Eyes Only" information, which states as follows:

> Proprietary Information relating to highly sensitive financial information, including but not limited to, customer identification, sales prices to specific customers, profit margins and prospective marketing strategies, and highly sensitive technical information, including but not limited to, product design and development materials relating to products not yet for sale or released to the public, source code, or other highly sensitive, trade secret technical information not yet publicly disclosed, may be designated as ATTORNEYS EYES ONLY.

### B. Amount of Time Necessary For Designating Deposition Transcripts

■ The parties cannot agree on the amount of time a party or non-party has to designate a deposition transcript as either Confidential or Attorneys Eyes Only. Avocent proposes that the parties have five days from the day the transcript becomes available to designate the transcript (i.e., when the court reporter sends the transcript to the parties). Defendants agree to a five day waiting period, but argue that it should be triggered when the court reporter notifies the parties that the transcript is available. The Court orders the following resolution: a party or third party may make its designation within five days of *receipt,* either by mail or email, of the deposition transcript.

### C. Prohibition on Outside Counsel Who Receive Attorneys Eyes Only Information From Involvement in Patent Prosecution for Two Years

■ Defendants propose an additional provision in the protective order that would bar any person who receives access to Attorneys Eyes Only information from any involvement in prosecuting any patent involving KVM switch technology for two years after the conclusion of this litigation, including all appeals. (*See* Plf.'s Mot., Ex. 2.) Defendants argue that this prohibition is necessary to prevent Avocent's counsel allowed access to Defendants' highly-sensitive KVM switch design information from inadvertently

using that information while prosecuting new KVM patents for Avocent. Avocent opposes the access prohibition.

Fed.R.Civ.P. 26(c) authorizes the court to protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." The party seeking the protective order carries the burden of showing good cause for its issuance. *See* Fed.R.Civ.P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994).

■ The scope of protective orders seeking to limit access to attorneys to confidential information is governed by the principles set down by the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir.1984) (holding that court erred when it prohibited access to confidential information based on attorney's status as "in-house" counsel and requiring case-by-case and attorney-by attorney determination). As explained by the Federal Circuit, the policy underlying a restriction on counsel's access to confidential materials is the concern that counsel might inadvertently disclose the confidential material learned during the course of litigation. *See id.* at 1468. The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992). The inquiry focuses on whether counsel can be a deemed a "competitive decision-maker," which the Federal Circuit says is shorthand for "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n. 3. Whether counsel is "in-house" or "retained" is not dispositive on the issue: "denial or grant of access ... cannot rest on a general assumption that one group of lawyers is more likely or less likely inadvertently to breach their duty under a protective order." *See id.* at 1468. In addition to determining whether an attorney is a competitive decision-maker, courts must also consider whether denying that attorney access to confidential material would work a substantial hardship on that attorney's client. *Id.*

In *Brown Bag*, the Ninth Circuit upheld the magistrate judge's decision to issue a protective order that denied access to plaintiff's in-house counsel to defendant's trade secret information. The court noted that the magistrate judge had held a comprehensive evidentiary hearing at which defendant's counsel described the extreme sensitivity of the trade secrets at issue and the potential damage to defendant should the trade secrets inadvertently become subject to misuse by its competitor, plaintiff Brown Bag. *Brown Bag*, 960 F.2d at 1470–71. Brown Bag's in-house counsel admitted that he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment. *Id.* at 1471. Thus, Brown Bag's in-house counsel was involved in the kind of "competitive decision-making" that warrants a limitation on disclosure under the *U.S. Steel* analysis.

A number of district courts have applied the *U.S. Steel/Brown Bag* analysis in the context of patent cases. Two courts in this district have denied protective orders that would have prohibited revealing confidential and proprietary information to plaintiffs' in-house counsel. In both those cases, the courts based their decision on their factual determination that in-house counsel was not involved in competitive decisionmaking. *See Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134, 139 (W.D.Wash.1994); *Fluke Corp. v. Fine Instruments Corp.*, Case No. C94–573C, 1994 WL 739705, at *4–6, 1994 U.S. Dist. LEXIS 16286, at *14–16 (W.D.Wash. October 6, 1994). However, neither of these courts addressed the precise question of whether counsel who prosecutes patents on behalf of a client is a "competitive decisionmaker."

That question has been answered affirmatively by a number of courts. In *Motorola, Inc. v. Interdigital Technology Corp.*, the District of Delaware issued a protective or-

der that prohibited defendant's attorneys who received confidential information from plaintiff from prosecuting any patent application for defendant relating to the subject matter of the patents in suit during the pendency of the litigation and for one year after, including appeals. Case No. 93–488LON, 1994 WL 16189689, at *5–6, 1994 U.S. Dist. LEXIS 20714, at *17–18 (D.Del. Dec. 19, 1994). The court noted that the risk of inadvertent disclosure was high and that imposition of the protective order would pose little hardship to defendants, because the affected law firm had not been prosecuting these patents for a long period of time. *Id.* at *4–6, 1994 U.S. Dist. LEXIS 16286, at *14–16.

Likewise, in *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* CV–S–97–1383–HDM(LRL), 1998 U.S. Dist. LEXIS 22251 (D. Nev. April 23, 1998), the District of Nevada issued a protective order denying access to confidential information to one of plaintiff's law firms where that firm acted as plaintiff's patent prosecutor and patent litigator. Relying on *U.S. Steel, Brown Bag,* and *Motorola,* the court concluded that it would be impossible for counsel to compartmentalize the confidential information received: "The legal and factual components of [counsel's] advice regarding complex technology are so intertwined as to be inseparable ... it is unrealistic to expect that his knowledge of [defendant's] secret technology would not or could not influence the nature of his advice to [plaintiff]." *Mikohn,* 1998 U.S. Dist. LEXIS 22251, at * 12. After conducting factual inquiries, other courts have issued similar protective orders either denying access to confidential information to patent prosecutors or prohibiting those with access to that information from prosecuting patents related to the underlying suit for one to two years. *See In re Papst Licensing,* MDL No. 1298, 2000 WL 554219, 2000 U.S. Dist. LEXIS 6374 (E.D.La. May 4, 2000) (one year ban on prosecuting patents related to patent at issue in case); *Interactive Coupon Mktg. Group, Inc. v. H.O.T! Coupons, LLC,* No. 98–C–7408, 1999 WL 618969, 1999 U.S. Dist. LEXIS 12437 (N.D.Ill. August 9, 1999) (refusing to adopt per se rule regarding patent prosecutors, but inquiring "whether the firm's involvement in developing a patent prosecution strategy will be informed by such information to the competitor's detriment").

In contrast, a number of district courts have rejected the *Motorola* approach and denied protective orders that would exclude outside patent counsel from accessing information. Courts have criticized *Motorola* for equating patent prosecution activities with competitive decisionmaking. *See Sibia Neruosciences, Inc. v. Cadus Pharm. Corp.,* Case No. 96–1231–IEG, 1997 U.S. Dist. LEXIS 24130, at * 19, 26 (S.D.Cal. July 15, 1997); *see also AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc.,* No. 05–3006, 2006 WL 47374, *2, 2006 U.S. Dist. LEXIS 426, *7 (E.D.Penn.2006) (refusing to include provision in protective order because "[b]arring [plaintiff's] attorneys from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected in ... *U.S. Steel*"); *Pergo, Inc. v. Faus Group, Inc.,* No. 5:05–cv–50–FL(1), 2005 U.S. Dist. LEXIS 40601, *19–20 (E.D.N.C. Sept. 20, 2005) (where defendants presented no evidence in support of their assertion that attorney was key influence and involved in plaintiff's decision making process, court refused to prohibit him from accessing information solely on basis that he has prosecuted patents for plaintiff).

■ *U.S. Steel* and *Brown Bag* require a case-by-case analysis of whether an attorney should be excluded from access to certain information. "[T]he factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *U.S. Steel,* 730 F.2d at 1468. Avocent is represented in this litigation by four attorneys from two different law firms. Attorneys James Berquist, J. Scott Davidson, and Donald Jackson, from the Virginia law firm of Davidson, Berquist, Jackson & Gowdey, have appeared on Avocent's behalf. Local counsel is John Knox from the law firm of Williams, Kastner, & Gibbs. The Davidson Berquist firm repre-

sented Avocent in the prosecution of its most recently issued asserted patent. (Moore Decl. ¶ 3, Ex. 2.) Defendants identify attorney Michael Casey as a patent prosecutor at Davidson Berquist who has represented Avocent in the prosecution of its most recently issued asserted patent. Mr. Casey has not appeared in this action. Avocent states in its briefing that the protective order would affect Mr. Davidson, who is a long-time patent prosecutor for Avocent and trial counsel in this action. (*See* Davidson Decl. ¶ 3.) He has submitted a declaration in which he states that he has handled, and continues to handle, dozens of patent applications directed to the field of KVM switches for Avocent. (*Id.*) He has also represented Avocent in three patent cases involving KVM switches. (*Id.*)

Defendants argue that patent prosecution activities are "competitive decisionmaking" activities because the "objective of such activities is the issuance of patents designed to enjoin Defendants' products from the marketplace." (Defs.' Reply at 4.) Defendants are particularly concerned that Avocent's attorneys will use knowledge of Defendants' technology when they prosecute a continuation patent. Claims on a continuation patent are retroactively dated to the date of the original patent. Avocent disputes the validity of this concern and points out that it is limited in its continuation applications to claimed subject matter disclosed in the original patent.[1] *See* 35 U.S.C. § 120.

Avocent raises several other arguments against the proposed prohibition. Avocent argues that Defendants have not shown good cause for the access prohibition. Indeed, Defendants only make the vague argument that "potentially devastating consequences to Defendants' businesses" would result without exclusion of patent prosecution counsel. Avocent also argues that exclusion of Avocent's patent prosecution counsel would work a substantial hardship on Avocent. It appears that lawyers at the Davidson Berquist firm have represented Avocent Corp. in both patent prosecution and litigation matters since the formation of Avocent in mid-2000. (Plf.'s Mot. at 8). As Avocent explains, "Avocent and its parent have invested significant amounts of time and money educating its patent counsel on the technology involved in the present case, the legal issues likely to be litigated here, the industry's use of the same or similar technology, and the evolution of the market for the patented KVM switches." (*Id.*) Mr. Davidson, who has appeared on behalf of Avocent here, has litigated on behalf of Avocent in related cases involving the same patent family and has prosecuted one of the patents at issue here. As he explains, he is intimately familiar with the issues to be presented in this litigation.

Based on the relevant case law, and the evidence offered here, the Court rejects Defendants' proposed provision in the protective order. Defendants have not met their burden of showing good cause for entry of this provision. Defendants have not offered any evidence that suggests that Mr. Casey, Mr. Davidson, or any other of Avocent's patent prosecutors advise Avocent in its "competitive decisionmaking." Even though a number of courts have stated that the work of a patent prosecutor inherently involves advising the client in it competitive decisionmaking, those courts are not binding here, and *U.S. Steel* counsels that status as a patent litigator alone is not enough to show advice and participation in competitive decisionmaking. In addition, it appears that the exclusion would work a substantial hardship on Avocent because its litigator in this case is familiar with litigating these patents and has previously prosecuted KVM switch patents for Avocent. (Davidson Decl. ¶ 3.) The Court is unwilling to preclude lawyers from litigating here or in front of the patent office on a vague and generalized threat of future inadvertent misuse of discovered materials. The Court therefore denies Defendants' request that the Court enter a provision in the protective order precluding counsel that receives

1. Avocent also moves to strike two arguments made by Defendants in their reply. These arguments relate to patent prosecutors' duty of candor in front of the Patent Office and whether Avocent could draft its patent claims to cover Defendants' products in the absence of detailed confidential information about those products. Because these arguments do not affect the Court's analysis on the question of whether the protective order should issue, the motion to strike is moot.

Attorneys Eyes Only information from any involvement in patent prosecution involving KVM switch technology.

### Conclusion

The parties have reached agreement on the majority of a protective order, but disagree regarding three provisions. The Court GRANTS IN PART and DENIES IN PART Avocent's proposed protective order and DENIES Defendants' proposed protective order. The Court adopts Avocent's proposed definition of "Attorneys Eyes Only." The Court orders that a party or third party may make its designation within five days of receipt, either by mail or email, of the deposition transcript. And the Court rejects Defendants' proposal that the Court enter a provision in the protective order precluding counsel that receives Attorneys Eyes Only information from any involvement in patent prosecution involving KVM switch technology for two years after the conclusion of this case and all subsequent appeals. The parties shall file a revised proposed protective order that is consistent with this order no later than June 4, 2007, for the Court's signature.

The clerk is directed to send a copy of this order to all counsel of record.